1
2
3
4

Brandon Fernald (SBN 222429)
FERNALD LAW GROUP APC
15910 Ventura Blvd., Suite 1702
Los Angeles, California 91436
Telephone:  323.410.0320
Email: brandon@fernaldlawgroup.com

5
6
7
8
9
10

Timothy E. Grochocinski (*to be admitted Pro Hac Vice*)
Illinois Bar No. 6295055
NELSON BUMGARDNER ALBRITTON PC
15020 S. Ravinia Avenue, Suite 29
Orland Park, Illinois 60462
Telephone:  708.675.1975
Email: tim@nbafirm.com

11

Attorneys for Plaintiff Flexiworld Technologies, Inc.

12
13
14

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 15 FLEXIWORLD TECHNOLOGIES, INC., 16 | Case No. |
| 17      Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| 18    v. 19 | Jury Trial Demanded |
| 20 EPSON AMERICAN, INC., 21 | |
| 22      Defendant. | |

23
24
25
26
27
28

Plaintiff Flexiworld Technologies, Inc., files this Original Complaint for patent infringement against Epson America, Inc. alleging as follows:

## NATURE OF THE SUIT

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## THE PARTIES

2.      Plaintiff **Flexiworld Technologies, Inc. ("Plaintiff" or "Flexiworld")** is a Washington corporation with its principal place of business at 2716 SE 169th Ave Q147, Vancouver, WA.

3.      Defendant **Epson America, Inc. ("Epson")** is a California corporation with a regular and established place of business located at 3840 Kilroy Airport Way, Long Beach, California 30806.  Epson can be served through its registered agent at The Prentice-Hall Corporation System, Inc., 251 Little Falls Drive, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

4.      This action arises under the patent laws of the United States, 35 U.S.C. § 101, et seq. This Court's jurisdiction over this action is proper under the above statutes, including 35 U.S.C. § 271, et seq., 28 U.S.C. § 1331 (federal question jurisdiction) and § 1338 (jurisdiction over patent actions).

5.      Epson is subject to personal jurisdiction in this Court.  In particular, this Court has personal jurisdiction over Epson because Epson, directly and through its subsidiaries, divisions, groups, or distributors, has sufficient minimum contacts with this forum as a result of business conducted within the State of California and/or pursuant to Fed. R. Civ. P. 4(k)(2).  Furthermore, on information and belief, Epson has engaged in continuous, systematic, and substantial activities within this State, including substantial marketing and sales of products within this State and this District.  Furthermore, on information and belief, this Court has personal jurisdiction

over Epson because Epson has committed acts giving rise to Flexiworld's claims for patent infringement within and directed to this District.

6.     Furthermore, on information and belief, Epson has purposefully and voluntarily placed one or more infringing products into the stream of commerce with the expectation that they will be purchased and/or used by residents of this judicial District, including by directly and indirectly working with distributors, and other entities located in the State of California, to ensure the accused products reach the State of California and this judicial District.

7.     Epson also maintains commercial websites accessible to residents of the State of California and this judicial District, through which Epson promotes and facilitates sales of the accused products.    For example, Epson's website https://epson.com/usa is accessible to consumers in the United States, including those in the State of California and this judicial District, where Epson supplies information about products that can be purchased and/or used in this judicial District, including the accused products identified herein.

8.     This Court has general jurisdiction over Epson due to Epson's continuous and systematic contacts with the State of California and this jurisdiction. Further, Epson is subject to this Court's jurisdiction because it has committed patent infringement in the State of California and this jurisdiction.    Thus, Epson has established minimum contacts with the State of California and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

9.     On information and belief, Epson has committed acts of infringement in this District and has one or more regular and established places of business within this District under the language of 28 U.S.C. § 1400(b).  Epson maintains a permanent physical presence within the Central District of California, conducting business from at least its location at 3840 Kilroy Airport Way, Long Beach, California, 30806. Thus, venue is proper in this District with respect to Epson under 28 U.S.C. § 1400(b).

10.     In addition, on information and belief, venue is proper in this judicial district under 28 U.S.C. § 1391(b), (c) and 1400(b) because Epson has conducted and does conduct substantial business in this forum, directly and/or through subsidiaries, agents, representatives, or intermediaries, such substantial business including but not limited to: (i) at least a portion of the infringements alleged herein; (ii) purposefully and voluntarily placing one or more infringing products into the stream of commerce with the expectation that they will be purchased by consumers in this forum; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in California and in this judicial district.

11.     Venue is therefore proper in the Central District of California pursuant to 28 U.S.C. § 1400(b).

## FLEXIWORLD AND THE PATENTS-IN-SUIT

12.     Flexiworld is a pioneer and leading innovator in the field of pervasive wireless technologies.

13.     Flexiworld was founded by American scientist and inventor William Ho Chang and is an innovator engaged in research and development of technologies for wireless applications and embedded solutions in short-range wireless (e.g., WiFi, Bluetooth) and mobile device markets.

14.     Flexiworld has significantly contributed to the innovation of wireless devices such as mobile phones, notebooks, PDAs, digital cameras, wireless television, wireless printers, wireless audio devices, etc.

15.     Flexiworld was voted the best early-stage company in the Pacific Northwest in 2002 and Flexiworld's business plan was also voted, consecutively, as the top 2 among the "Ten Best" in 2002 and in 2003 by the Business Journal in Silicon Valley, USA.

PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

16. Flexiworld's innovative work and results have been widely recognized in the industry. The company's patents have been repeatedly forward cited by major technology companies worldwide, including by Seiko Epson Corporation.

17. Flexiworld has developed wireless applications and embedded solutions for the short-range wireless and mobile device market.

18. William H. Chang, one of the named co-inventors on the Patents-in-Suit, is the founder and President of Flexiworld. Mr. Chang has been granted over 88 United States patents and over 100 patents worldwide on his inventions.

19. Christina Ying Liu, one of the named co-inventors on the Patents-in-suit, is a Flexiworld shareholder. Ms. Liu has been granted over 65 United States patents and over 75 patents worldwide on her inventions.

20. This cause of action asserts infringement of United States Patent Nos. 7,609,402 ("the '402 Patent"), 8,630,000 ("the '000 Patent"), 9,036,181 ("the '181 Patent"), 10,037,178 ("the '178 Patent"), 10,140,071 ("the '071 Patent"), 10,140,073 ("the '073 Patent"), 10,481,846 ("the '846 Patent"), 10,481,847 ("the '847 patent"), 10,642,576 ("the '576 Patent"), 10,740,066 ("the '066 Patent"), 10,761,791 ("the '791 Patent"), 10,768,871 ("the '871 Patent"), 10,846,031 ("the '031 Patent"), and 10,873,856 ("the '856 Patent"), (collectively, the "Patents-in-Suit").

**The '402 Patent**

21. The '402 Patent, entitled "Methods For Universal Data Output," duly and legally issued on October 27, 2009, from U.S. Patent Application No. 10/053,651, filed on January 18, 2002, naming William Ho Chang and Christina Ying Liu as the inventors. A true and correct copy of the '402 Patent is attached hereto as **Exhibit 1** and is incorporated by reference.

22. The '402 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

23. Flexiworld is the owner and assignee of all rights, title, and interest in and under the '402 Patent.

24.    An assignment of the '402 Patent from inventors Chang and Liu to Flexiworld is recorded at the United States Patent and Trademark Office ("PTO") at Reel/Frame 028733/0064.

25.    Flexiworld has standing to sue for infringement of the '402 Patent.

**The '000 Patent**

26.    The '000 Patent, entitled "Essential Components For Enabling A Pervasive Wireless Digital Ecosystem and Wireless Devices That Support the Wireless Digital Ecosystem," duly and legally issued on January 14, 2014, from U.S. Patent Application No. 11/929,501, filed on October 30, 2007 naming William Ho Chang and Christina Ying Liu as the inventors.  A true and correct copy of the '000 Patent is attached hereto as **Exhibit 2** and is incorporated by reference.

27.    The '000 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

28.    Flexiworld is the owner and assignee of all rights, title, and interest in and under the '000 Patent.

29.    An assignment of the '000 Patent from inventors Chang and Liu to Flexiworld is recorded at the United States Patent and Trademark Office ("PTO") at Reel/Frame 029112/0430.

30.    Flexiworld has standing to sue for infringement of the '000 Patent.

**The '181 Patent**

31.    The '181 Patent, entitled "Wireless Printing Device For Printing Digital Content Received Via Wireless Communication Compatible, At Least Partly, With IEEE 802.11 or Bluetooth," duly and legally issued on May 19, 2015, from U.S. Patent Application No. 12/764,015, filed on April 20, 2010, naming William Ho Chang and Christina Ying Liu as the inventors.  A true and correct copy of the '181 Patent is attached hereto as **Exhibit 3** and is incorporated by reference.

32.    The '181 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

33.     Flexiworld is the owner and assignee of all rights, title, and interest in and under the '181 Patent.

34.     An assignment of the '181 Patent from inventors Chang and Liu to Flexiworld is recorded at the United States Patent and Trademark Office ("PTO") at Reel/Frame 029112/0430.

35.     Flexiworld has standing to sue for infringement of the '181 Patent.

**The '178 Patent**

36.     The '178 Patent, entitled "Wireless Output Devices or Wireless Controllers That Support Wireless Device Discovery for Establishing Wireless Connectivity," duly and legally issued on July 31, 2018, from U.S. Patent Application No. 15/348,006, filed on November 10, 2016, naming William Ho Chang and Christina Ying Liu as the inventors. A true and correct copy of the '181 Patent is attached hereto as **Exhibit 4** and is incorporated by reference.

37.     The '178 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

38.     Flexiworld is the owner and assignee of all rights, title, and interest in and under the '178 Patent.

39.     An assignment of the '178 Patent from inventors Chang and Liu to Flexiworld is recorded at the United States Patent and Trademark Office ("PTO") at Reel/Frame 042385/0202.

40.     Flexiworld has standing to sue for infringement of the '178 Patent.

**The '071 Patent**

41.     The '071 Patent, entitled " Printers, Printer Controllers, Printer Software, or Printer Firmware for Supporting Wireless Printing or Printing Over Air," duly and legally issued on November 27, 2018, from U.S. Patent Application No. 15/332,432, filed on October 24, 2016, naming William Ho Chang and Christina Ying Liu as the inventors. A true and correct copy of the '071 Patent is attached hereto as **Exhibit 5** and is incorporated by reference.

42.    The '071 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

43.    Flexiworld is the owner and assignee of all rights, title, and interest in and under the '071 Patent.

44.    An assignment of the '071 Patent from inventors Chang and Liu to Flexiworld is at the PTO at Reel/Frame 042385/0202.

45.    Flexiworld has standing to sue for infringement of the '071 Patent.

**The '073 Patent**

46.    The '073 Patent, entitled "Wireless Devices That Establish A Wireless Connection With A Mobile Information Connection With A Mobile Information Apparatus by Wirelessly Detecting, Within Physical Proximity, the Mobile Information Apparatus," duly and legally issued on November 27, 2018, from U.S. Patent Application No. 15/627,197, filed on June 19, 2017, naming William Ho Chang and Christina Ying Liu as the inventors.  A true and correct copy of the '073 Patent is attached hereto as **Exhibit 6** and is incorporated by reference.

47.    The '073 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

48.    Flexiworld is the owner and assignee of all rights, title, and interest in and under the '073 Patent.

49.    An assignment of the '073 Patent from inventors Chang and Liu to Flexiworld is recorded at the United States Patent and Trademark Office ("PTO") at Reel/Frame 043035/0229.

50.    Flexiworld has standing to sue for infringement of the '073 Patent.

**The '846 Patent**

51.    The '846 Patent, entitled, "Software Applications and Information Apparatus For Printing Over Air or For Printing Over A Network," duly and legally issued on November 19, 2019, from U.S. Patent Application No. 15/697,247, filed on September 6, 2017, naming William Ho Chang and Christina Ying Liu as the

inventors.  A true and correct copy of the '846 Patent is attached hereto as **Exhibit 7** and is incorporated by reference.

52.    The '846 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

53.    Flexiworld is the owner and assignee of all rights, title, and d interest in and under the '846 Patent.

54.    An assignment of the '846 Patent from inventors Chang and Liu to Flexiworld is recorded at the PTO at Reel/Frame 044174/0659.

55.    Flexiworld has standing to sue for infringement of the '846 Patent.

**The '847 Patent**

56.    The '847 patent, entitled, "Information Apparatus and Software Applications Supporting Output of Digital Content Over A Network to a Registered Output Device," duly and legally issued on November 19, 2019, form U.S. Application No. 15/710,711, filed on September 20, 2017, naming William Ho Chang and Christina Ying Liu as the inventors.  A true and correct copy of the '847 patent is attached hereto as **Exhibit 8** and is incorporated by reference.

57.    The '847 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

58.    Flexiworld is the owner and assignee of all rights, title, and d interest in and under the '847 Patent.

59.    An assignment of the '847 Patent from inventors Chang and Liu to Flexiworld is recorded at the PTO at Reel/Frame 043675/0451.

60.    Flexiworld has standing to sue for infringement of the '847 Patent.

**The '576 Patent**

61.    The '576 Patent, entitled, "Mobile Information Apparatus That Includes Wireless Communication Circuitry for Discovery of an Output Device for Outputting Digital Content at the Wirelessly Discovered Output Device," duly and legally issued on May 5, 2020, from U.S. Patent Application No. 16/229,896, filed on December

8

21, 2018, naming William Ho Chang and Christina Ying Liu as the inventors. A true and correct copy of the '576 Patent is attached hereto as **Exhibit 9** and is incorporated by reference.

62.    The '576 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

63.    Flexiworld is the owner and assignee of all rights, title, and interest in and under the '576 Patent.

64.    An assignment of the '576 Patent from inventors Chang and Liu to Flexiworld is recorded at the PTO at Reel/Frame 012382/0239.

65.    Flexiworld has standing to sue for infringement of the '576 Patent.

**The '066 Patent**

66.    The '066 Patent, entitled "Output Devices That Establish Wireless Connection With an Information Apparatus Subsequent to Having Been Wirelessly Discovered by the Information Apparatus," duly and legally issued on August 11, 2020, from U.S. Patent Application No. 16/396,460, filed on April 26, 2019, naming William Ho Chang and Christina Ying Liu as the inventors. A true and correct copy of the '066 Patent is attached hereto as **Exhibit 10** and is incorporated by reference.

67.    The '066 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

68.    Flexiworld is the owner and assignee of all rights, title, and interest in and under the '066 Patent.

69.    An assignment of the '066 Patent from inventors Chang and Liu to Flexiworld is recorded at the United States Patent and Trademark Office ("PTO") at Reel/Frame 50223/6419 and 50436/8189.

70.    Flexiworld has standing to sue for infringement of the '066 Patent.

**The '791 Patent**

71.    The '791 Patent, entitled, "Wireless Printing Devices That Provide Printing Services Over A Network Without A Need for A Client Device of the

9

Printing Device to Use, at the Client Device, A Printer Specific Printer Driver," duly and legally issued on September 1, 2020, from U.S. Patent Application No. 15/726,899, filed on October 6, 2017, naming William Ho Chang and Christina Ying Liu as the inventors. A true and correct copy of the '791 Patent is attached hereto as **Exhibit 11** and is incorporated by reference.

72. The '791 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

73. Flexiworld is the owner and assignee of all rights, title, and interest in and under the '791 Patent.

74. An assignment of the '791 Patent from inventors Chang and Liu to Flexiworld is recorded at the PTO at Reel/Frame 043806/0709.

75. Flexiworld has standing to sue for infringement of the '791 Patent.

**The '871 Patent**

76. The '871 Patent, entitled "Wireless Output Devices For Wireless Controllers For Establishing Wireless Connectivity And For Receiving Digital Content," duly and legally issued on September 8, 2020, from U.S. Patent Application No. 16/051,371, filed on July 31, 2018, naming William Ho Chang and Christina Ying Liu as the inventors. A true and correct copy of the '871 Patent is attached hereto as **Exhibit 12** and is incorporated by reference.

77. The '871 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

78. Flexiworld is the owner and assignee of all rights, title, and interest in and under the '871 Patent.

79. An assignment of the '871 Patent from inventors Chang and Liu to Flexiworld is recorded at the United States Patent and Trademark Office ("PTO") at Reel/Frame 046519/0534.

80. Flexiworld has standing to sue for infringement of the '871 Patent.

**The '031 Patent**

PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

81.    The '031 Patent, entitled "Software Application For A Mobile Device To Wirelessly Manage or Wirelessly Setup an Output System or Output Device For Service," duly and legally issued on November 24, 2020, from U.S. Patent Application No. 15/594,440, filed on May 12, 2017, naming William Ho Chang and Christina Ying Liu as the inventors.  A true and correct copy of the '031 Patent is attached hereto as **Exhibit 13** and is incorporated by reference.

82.    The '031 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

83.    Flexiworld is the owner and assignee of all rights, title, and interest in and under the '031 Patent.

84.    An assignment of the '031 Patent from inventors Chang and Liu to Flexiworld is recorded at the United States Patent and Trademark Office ("PTO") at Reel/Frame 042385/0202.

85.    Flexiworld has standing to sue for infringement of the '031 Patent.

**The '856 Patent**

86.    The '856 Patent, entitled "Printing Devices Supporting Printing Over Air or Printing Over A Wireless Network," duly and legally issued on December 22, 2020, from U.S. Patent Application No. 15/713,546, filed on September 22, 2017, naming William Ho Chang and Christina Ying Liu as the inventors.  A true and correct copy of the '856 Patent is attached hereto as **Exhibit 14** and is incorporated by reference.

87.    The '856 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

88.    Flexiworld is the owner and assignee of all rights, title, and interest in and under the '856 Patent.

89.    An assignment of the '856 Patent from inventors Chang and Liu to Flexiworld is recorded at the United States Patent and Trademark Office ("PTO") at Reel/Frame 043675/0454.

PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

90.    Flexiworld has standing to sue for infringement of the '853 Patent.

91.    Epson has not obtained a license to any of the Patents-in-Suit.

92.    Epson does not have Flexiworld's permission to make, use, sell, offer to sell, or import products or practice methods that are covered by one or more claims of any of the Patents-in-Suit.

93.    Epson needs to obtain a license to the Patents-in-Suit and cease its ongoing infringement of Flexiworld's patent rights.

**GENERAL ALLEGATIONS**

94.    Epson makes, uses, sells, offers to sell, and/or imports into the United States products as claimed in each of the Patents-in-Suit.

95.    Epson makes, uses, sells, offers to sell, and/or imports into the United States wireless printers that infringe at least one claim of one or more of the Patents-in-Suit, including but not limited to Epson's Expression, WorkForce, and EcoTank wireless printers (**"the Accused Wireless Printers"**).

96.    Epson makes, uses, sells, offers to sell, and/or imports into the United States a computer readable medium, with at least part of a software program recorded therein, that infringes at least one claim of one or more of the Patents-in-Suit, including but not limited to computer readable recording mediums with Epson's iPrint App recorded therein (**"the Accused Epson Apps"**).

97.    Epson has infringed and continues to infringe (literally and/or under the doctrine of equivalents), directly, indirectly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of each of the Patents-in-Suit by making, using, importing, testing, supplying, causing to be supplied, selling, and/or offering for sale in the United States the Accused Wireless Printers and/or the Accused Epson Apps (collectively **"the Accused Products"**).

98.    Epson's customers have directly infringed and continue to directly infringe the Patents-in-Suit by using the Accused Products.  Through its product manuals, website, and/or sales and marketing activities, Epson solicits, instructs,

12

encourages, and aids and abets its customers to purchase and use the Accused Products in an infringing way.

99.   Epson has knowledge of the Patents-in-Suit at least as of service of this lawsuit.

100.   Epson's ongoing actions are with specific intent to cause infringement of one or more claims of each of the Patents-in-Suit.

101.   Further discovery may reveal earlier knowledge of one or more of the Patents-in-Suit, which would provide additional evidence of Epson's specific intent and/or willful blindness with respect to infringement.

102.   Flexiworld has been and continues to be damaged as a result of Epson's infringing conduct. Epson is therefore liable to Flexiworld in an amount that adequately compensates Flexiworld for Epson's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

103.   Epson markets and sells other products that are not covered by the claims of the Patents-in-Suit but that are sold with or in conjunction with the Accused Products (e.g., printer ink).  Accordingly, Flexiworld is entitled to collect damages from Epson for convoyed sales of certain non-patented items.

104.   Epson failed to obtain permission from Flexiworld to make, use, sell, offer to sell, or import products incorporating the inventions claimed in the Patents-in-Suit including, but not limited to, the Accused Products.

105.   Attached hereto are **Exhibits 15-28,** and incorporated herein by reference, are representative claim charts detailing how the exemplar Accused Products have, and continue to, infringe the Patents-in-Suit.

106.   For each count of infringement listed below, Flexiworld incorporates and re-states the allegations contained in the preceding paragraphs above, including these General Allegations, as if fully set forth in each count of infringement.

## COUNT I – INFRINGEMENT OF THE '402 PATENT

13

107.   Flexiworld incorporates herein the allegations made in paragraphs 1 through 106.

108.   Epson has and continues to directly infringe one or more claims of the '402 Patent, including, for example, claim 13, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Epson Apps.

109.   An exemplary claim chart demonstrating Epson's infringement of the '402 Patent, as well as Epson's customers' infringement of the '402 Patent, which is induced and contributed to by Epson, is attached as **Exhibit 15** and incorporated herein by reference.

110.   Additionally, on information and belief, Epson is indirectly infringing the '402 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase and/or download the Accused Epson Apps and/or by instructing customers how to use the Accused Epson Apps in a way that directly infringes at least claim 13 of the '402 Patent.

111.   Epson has had actual knowledge of the '402 Patent since at least receipt of service of this Complaint.

112.   On information and belief, Epson's ongoing actions represent a specific intent to induce infringement of at least claim 13 of the '402 Patent.  For example, Epson offers its customers extensive customer support and instructions that instruct and encourage its customers to infringe the '402 Patent via at least their use of the Accused Epson Apps.  *See, e.g.,* https://epson.com/Support/sl/s; *see also* **Exhibit 15** and materials cited therein.

113.   Additionally, on information and belief, Epson is indirectly infringing the '402 Patent in violation of 35 U.S.C. § 271(c) by contributing to the direct infringement of Epson's customers, including at least claim 13 of the '402 Patent. Since at least when it learned of the '402 Patent, Epson has known, or should have

known, that the intended use of its Accused Epson Apps by an end user is both patented and infringing.

114.   The Accused Epson Apps are not staple articles or commodities of commerce suitable for substantial noninfringing use.  Rather, the Accused Epson Apps are especially made and/or adapted for use in infringing the '402 Patent.  Further, the Accused Epson Apps are a material part of the inventions claimed in the '402 Patent.  *See* **Exhibit 15** and materials cited therein.

115.   As a result of Epson's infringement of the '402 Patent, Flexiworld has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## <u>COUNT II – INFRINGEMENT OF THE '000 PATENT</u>

116.   Flexiworld incorporates herein the allegations made in paragraphs 1 through 106.

117.   Epson has and continues to directly infringe one or more claims of the '000 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Epson Apps.

118.   An exemplary claim chart demonstrating Epson's infringement of the '000 Patent, as well as Epson's customers' infringement of the '000 Patent, which is induced and contributed to by Epson, is attached as **Exhibit 16** and incorporated herein by reference.

119.   Additionally, on information and belief, Epson is indirectly infringing the '000 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase and/or download the Accused Epson Apps and/or by instructing customers how to use the Accused Epson Apps in a way that directly infringes at least claim 1 of the '000 Patent.

120.   Epson has had actual knowledge of the '000 Patent since at least receipt of service of this Complaint.

121.    On information and belief, Epson's ongoing actions represent a specific intent to induce infringement of at least claim 1 of the '000 Patent.  For example, Epson offers its customers extensive customer support and instructions that instruct and encourage its customers to infringe the '000 Patent via at least their use of the Accused Epson Apps.  *See, e.g.,* https://epson.com/Support/sl/s; *see also* **Exhibit 16** and materials cited therein.

122.    Additionally, on information and belief, Epson is indirectly infringing the '000 Patent in violation of 35 U.S.C. § 271(c) by contributing to the direct infringement of Epson's customers, including at least claim 1 of the '000 Patent. Since at least when it learned of the '000 Patent, Epson has known, or should have known, that the intended use of its Accused Epson Apps by an end user is both patented and infringing.

123.    The Accused Epson Apps are not staple articles or commodities of commerce suitable for substantial noninfringing use.  Rather, the Accused Epson Apps are especially made and/or adapted for use in infringing the '000 Patent. Further, the Accused Epson Apps are a material part of the inventions claimed in the '000 Patent.  *See* **Exhibit 16** and materials cited therein.

124.    As a result of Epson's infringement of the '000 Patent, Flexiworld has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## <u>COUNT III – INFRINGEMENT OF THE '181 PATENT</u>

125.    Flexiworld incorporates herein the allegations made in paragraphs 1 through 106.

126.    Epson has and continues to directly infringe one or more claims of the '181 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Wireless Printers.

PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

127.  An exemplary claim chart demonstrating Epson's infringement of the '181 Patent, as well as Epson's customers' infringement of the '181 Patent, which is induced by Epson, is attached as **Exhibit 17** and incorporated herein by reference.

128.  Additionally, on information and belief, Epson is indirectly infringing the '181 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase the Accused Wireless Printers and/or by instructing customers how to use the Accused Wireless Printers in a way that directly infringes at least claim 1 of the '181 Patent.

129.  Epson has had actual knowledge of the '181 Patent since at least receipt of service of this Complaint.

130.  On information and belief, Epson's ongoing actions represent a specific intent to induce infringement of at least claim 1 of the '181 Patent.  For example, Epson offers its customers extensive customer support and instructions that instruct and encourage its customers to infringe the '181 Patent via at least their use of the Accused Wireless Printers. *See, e.g.,* https://epson.com/Support/sl/s; *see **also** **Exhibit 17** and materials cited therein.

131.  As a result of Epson's infringement of the '181 Patent, Flexiworld has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## COUNT IV – INFRINGEMENT OF THE '178 PATENT

132.  Flexiworld incorporates herein the allegations made in paragraphs 1 through 106.

133.  Epson has and continues to directly infringe one or more claims of the '178 Patent, including, for example, claim 7, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Wireless Printers.

134.   An exemplary claim chart demonstrating Epson's infringement of the '178 Patent, as well as Epson's customers' infringement of the '178 Patent, which is induced by Epson, is attached as **Exhibit 18** and incorporated herein by reference.

135.   Additionally, on information and belief, Epson is indirectly infringing the '178 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase the Accused Wireless Printers and/or by instructing customers how to use the Accused Wireless Printers in a way that directly infringes at least claim 7 of the '178 Patent.

136.   Epson has had actual knowledge of the '178 Patent since at least receipt of service of this Complaint.

137.   On information and belief, Epson's ongoing actions represent a specific intent to induce infringement of at least claim 7 of the '178 Patent.  For example, Epson offers its customers extensive customer support and instructions that instruct and encourage its customers to infringe the '178 Patent via at least their use of the Accused Wireless Printers.  *See, e.g.,*  https://epson.com/Support/sl/s; *see also* **Exhibit 18** and materials cited therein.

138.   As a result of Epson's infringement of the '178 Patent, Flexiworld has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## COUNT V – INFRINGEMENT OF THE '071 PATENT

139.   Flexiworld incorporates herein the allegations made in paragraphs 1 through 106.

140.   Epson has and continues to directly infringe one or more claims of the '071 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Wireless Printers.

141.   An exemplary claim chart demonstrating Epson's infringement of the '071 Patent, as well as Epson's customers' infringement of the '071 Patent, which is induced by Epson, is attached as **Exhibit 19** and incorporated herein by reference.

142.   Additionally, on information and belief, Epson is indirectly infringing the '071 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase the Accused Wireless Printers and/or by instructing customers how to use the Accused Wireless Printers in a way that directly infringes at least claim 1 of the '071 Patent.

143.   Epson has had actual knowledge of the '071 Patent since at least receipt of service of this Complaint.

144.   On information and belief, Epson's ongoing actions represent a specific intent to induce infringement of at least claim 1 of the '071 Patent.  For example, Epson offers its customers extensive customer support and instructions that instruct and encourage its customers to infringe the '071 Patent via at least their use of the Accused Wireless Printers.  *See, e.g.,* https://epson.com/Support/sl/s; *see also* **Exhibit 19** and materials cited therein.

145.   As a result of Epson's infringement of the '071 Patent, Flexiworld has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## <u>COUNT VI – INFRINGEMENT OF THE '073 PATENT</u>

146.   Flexiworld incorporates herein the allegations made in paragraphs 1 through 106.

147.   Epson has and continues to directly infringe one or more claims of the '073 Patent, including, for example, claim 8, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Wireless Printers.

148.    An exemplary claim chart demonstrating Epson's infringement of the '073 Patent, as well as Epson's customers' infringement of the '073 Patent, which is induced by Epson, is attached as **Exhibit 20** and incorporated herein by reference.

149.    Additionally, on information and belief, Epson is indirectly infringing the '073 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase the Accused Wireless Printers and/or by instructing customers how to use the Accused Wireless Printers in a way that directly infringes at least claim 8 of the '073 Patent.

150.    Epson has had actual knowledge of the '073 Patent since at least receipt of service of this Complaint.

151.    On information and belief, Epson's ongoing actions represent a specific intent to induce infringement of at least claim 8 of the '073 Patent.  For example, Epson offers its customers extensive customer support and instructions that instruct and encourage its customers to infringe the '073 Patent via at least their use of the Accused Wireless Printers.  *See, e.g.,* https://epson.com/Support/sl/s; *see also* **Exhibit 20** and materials cited therein.

152.    As a result of Epson's infringement of the '073 Patent, Flexiworld has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## COUNT VII – INFRINGEMENT OF THE '846 PATENT

153.    Flexiworld incorporates herein the allegations made in paragraphs 1 through 106.

154.    Epson has and continues to directly infringe one or more claims of the '846 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Epson Apps, including non-transitory computer readable storage mediums with the Accused Epson Apps.

155.   An exemplary claim chart demonstrating Epson's infringement of the '846 Patent, as well as Epson's customers' infringement of the '846 Patent, which is induced and contributed to by Epson, is attached as **Exhibit 21** and incorporated herein by reference.

156.   Additionally, on information and belief, Epson is indirectly infringing the '846 Patent in violation of 35 U.S.C. § 271(b) by inducing customers to purchase and/or download the Accused Epson Apps and/or by instructing customers how to use the Accused Epson Apps in a way that directly infringes at least claim 1 of the '846 Patent.

157.   Epson has had actual knowledge of the '846 Patent since at least receipt of service of this Complaint.

158.   On information and belief, Epson's ongoing actions represent a specific intent to induce infringement of at least claim 1 of the '846 Patent.  For example, Epson offers its customers extensive customer support and instructions, including an instructional video and brochures, that instruct and encourage its customers to infringe the '846 Patent via at least their use of the Accused Epson Apps.  *See, e.g.,* https://epson.com/Support/sl/s; *see also* **Exhibit 21** and materials cited therein.

159.   Additionally, on information and belief, Epson is indirectly infringing the '846 Patent in violation of 35 U.S.C. § 271(c) by contributing to the direct infringement of Epson's customers.  Since at least when it learned of the '846 patent, Epson has known, or should have known, that the intended use of its Accused Epson Apps by an end user is both patented and infringing.

160.   The Accused Epson Apps are not staple articles or commodities of commerce suitable for substantial non infringing use.  Rather, the Accused Epson Apps are especially made and/or adapted for use in infringing the '846 Patent. Further, the Accused Epson Apps are a material part of the inventions claimed in claim 1 of the '846 Patent.  *See* **Exhibit 21** and materials cited therein.

161.   As a result of Epson's infringement of the '846 Patent, Flexiworld has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## COUNT VIII – INFRINGEMENT OF THE '847 PATENT

162.   Flexiworld incorporates herein the allegations made in paragraphs 1 through 106.

163.   Epson has and continues to directly infringe one or more claims of the '847 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Epson Apps, including non-transitory computer readable storage mediums with the Accused Epson Apps.

164.   An exemplary claim chart demonstrating Epson's infringement of the '847 Patent, as well as Epson's customers' infringement of the '847 Patent, which is induced and contributed to by Epson, is attached as **Exhibit 22** and incorporated herein by reference.

165.   Additionally, on information and belief, Epson is indirectly infringing the '847 Patent in violation of 35 U.S.C. § 271(b) by inducing customers to purchase and/or download the Accused Epson Apps and/or by instructing customers how to use the Accused Epson Apps in a way that directly infringes at least claim 1 of the '847 Patent.

166.   Epson has had actual knowledge of the '847 Patent since at least receipt of service of this Complaint.

167.   On information and belief, Epson's ongoing actions represent a specific intent to induce infringement of at least claim 1 of the '847 Patent.  For example, Epson offers its customers extensive customer support and instructions, including an instructional video and brochures, that instruct and encourage its customers to infringe the '847 Patent via at least their use of the Accused Epson Apps.  *See, e.g.,* https://epson.com/Support/sl/s; *see also* **Exhibit 22** and materials cited therein.

PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

168.   Additionally, on information and belief, Epson is indirectly infringing the '847 Patent in violation of 35 U.S.C. § 271(c) by contributing to the direct infringement of Epson's customers.  Since at least when it learned of the '847 patent, Epson has known, or should have known, that the intended use of its Accused Epson Apps by an end user is both patented and infringing.

169.   The Accused Epson Apps are not staple articles or commodities of commerce suitable for substantial non infringing use.  Rather, the Accused Epson Apps are especially made and/or adapted for use in infringing the '847 Patent. Further, the Accused Epson Apps are a material part of the inventions claimed in claim 1 of the '847 Patent.  *See* **Exhibit 22** and materials cited therein.

170.   As a result of Epson's infringement of the '847 Patent, Flexiworld has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## <u>COUNT IX – INFRINGEMENT OF THE '576 PATENT</u>

171.   Flexiworld incorporates herein the allegations made in paragraphs 1 through 106.

172.   Epson has and continues to directly infringe one or more claims of the '576 Patent, including, for example, claim 15 in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Epson Apps.

173.   An exemplary claim chart demonstrating Epson's infringement of the '576 Patent, as well as Epson's customers' infringement of the '576 Patent, which is induced and contributed to by Epson, is attached as **Exhibit 23** and incorporated herein by reference.

174.   Additionally, on information and belief, Epson is indirectly infringing the '576 Patent in violation of 35 U.S.C. § 271(b) by inducing customers to purchase and/or download the Accused Epson Apps and/or by instructing customers how to

PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

use the Accused Epson Apps in a way that directly infringes at least claim 15 of the '576 Patent.

175.    Epson has had actual knowledge of the '576 Patent since at least receipt of service of this Complaint.

176.    On information and belief, Epson's ongoing actions represent a specific intent to induce infringement of at least claim 15 of the '576 Patent. For example, Epson offers its customers extensive customer support and instructions, including an instructional video and brochures, that instruct and encourage its customers to infringe the '576 Patent via at least their use of the Accused Epson Apps. *See, e.g.,* https://epson.com/Support/sl/s; *see also* **Exhibit 23** and materials cited therein.

177.    Additionally, on information and belief, Epson is indirectly infringing the '576 Patent in violation of 35 U.S.C. § 271(c) by contributing to the direct infringement of Epson's customers. Since at least when it learned of the '576 patent, Epson has known, or should have known, that the intended use of its Accused Epson Apps by an end user is both patented and infringing.

178.    The Accused Epson Apps are not staple articles or commodities of commerce suitable for substantial non infringing use. Rather, the Accused Epson Apps are especially made and/or adapted for use in infringing the '576 Patent. Further, the Accused Epson Apps are a material part of the inventions claimed in claim 15 of the '576 Patent. *See* **Exhibit 23** and materials cited therein.

179.    As a result of Epson's infringement of the '576 Patent, Flexiworld has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## <u>COUNT X – INFRINGEMENT OF THE '066 PATENT</u>

180.    Flexiworld incorporates herein the allegations made in paragraphs 1 through 106.

181.    Epson has and continues to directly infringe one or more claims of the '066 Patent, including, for example, claim 7, in violation of 35 U.S.C. § 271(a) by

making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Wireless Printers.

182.   An exemplary claim chart demonstrating Epson's infringement of the '066 Patent, as well as Epson's customers' infringement of the '066 Patent, which is induced by Epson, is attached as **Exhibit 24** and incorporated herein by reference.

183.   Additionally, on information and belief, Epson is indirectly infringing the '066 Patent in violation of 35 U.S.C. § 271(b) by inducing customers to purchase the Accused Wireless Printers and/or by instructing customers how to use the Accused Wireless Printers in a way that directly infringes at least claim 7 of the '066 Patent.

184.   Epson has had actual knowledge of the '066 Patent since at least receipt of service of this Complaint.

185.   On information and belief, Epson's ongoing actions represent a specific intent to induce infringement of at least claim 7 of the '066 Patent.  For example, Epson offers its customers extensive customer support and instructions, including an instructional video and brochures, that instruct and encourage its customers to infringe the '066 Patent via at least their use of the Accused Wireless Printers.  *See, e.g.,* https://epson.com/Support/sl/s; *see also* **Exhibit 24** and materials cited therein.

186.   As a result of Epson's infringement of the '066 Patent, Flexiworld has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## <u>COUNT XI – INFRINGEMENT OF THE '791 PATENT</u>

187.   Flexiworld incorporates herein the allegations made in paragraphs 1 through 106.

188.   Epson has and continues to directly infringe one or more claims of the '791 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Wireless Printers.

189.   An exemplary claim chart demonstrating Epson's infringement of the '791 Patent, as well as Epson's customers' infringement of the '791 Patent, which is induced by Epson, is attached as **Exhibit 25** and incorporated herein by reference.

190.   Additionally, on information and belief, Epson is indirectly infringing the '791 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase the Accused Wireless Printers and/or by instructing customers how to use the Accused Wireless Printers in a way that directly infringes at least claim 1 of the '791 Patent.

191.   Epson has had actual knowledge of the '791 Patent since at least receipt of service of this Complaint.

192.   On information and belief, Epson's ongoing actions represent a specific intent to induce infringement of at least claim 1 of the '791 Patent.  For example, Epson offers its customers extensive customer support and instructions that instruct and encourage its customers to infringe the '791 Patent via at least their use of the Accused Wireless Printers.  *See, e.g.,* https://epson.com/Support/sl/s; *see **also* **Exhibit 25** and materials cited therein.

193.   As a result of Epson's infringement of the '791 Patent, Flexiworld has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## <u>COUNT XII – INFRINGEMENT OF THE '871 PATENT</u>

194.   Flexiworld incorporates herein the allegations made in paragraphs 1 through 106.

195.   Epson has and continues to directly infringe one or more claims of the '871 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Wireless Printers.

PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

196.   An exemplary claim chart demonstrating Epson's infringement of the '871 Patent, as well as Epson's customers' infringement of the '871 Patent, which is induced by Epson, is attached as **Exhibit 26** and incorporated herein by reference.

197.   Additionally, on information and belief, Epson is indirectly infringing the '871 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase the Accused Wireless Printers and/or by instructing customers how to use the Accused Wireless Printers in a way that directly infringes at least claim 1 of the '871 Patent.

198.   Epson has had actual knowledge of the '871 Patent since at least receipt of service of this Complaint.

199.   On information and belief, Epson's ongoing actions represent a specific intent to induce infringement of at least claim 1 of the '871 Patent.  For example, Epson offers its customers extensive customer support and instructions that instruct and encourage its customers to infringe the '871 Patent via at least their use of the Accused Wireless Printers.  *See, e.g.,* https://epson.com/Support/sl/s; *see also* **Exhibit 26** and materials cited therein.

200.   As a result of Epson's infringement of the '871 Patent, Flexiworld has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## COUNT XIII – INFRINGEMENT OF THE '031 PATENT

201.   Flexiworld incorporates herein the allegations made in paragraphs 1 through 106.

202.   Epson has and continues to directly infringe one or more claims of the '031 Patent, including, for example, claim 14 in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Epson App.

203.   An exemplary claim chart demonstrating Epson's infringement of the '031 Patent, as well as Epson's customers' infringement of the '031 Patent, which is

induced and contributed to by Epson, is attached as **Exhibit 27** and incorporated herein by reference.

204.   Additionally, on information and belief, Epson is indirectly infringing the '031 Patent in violation of 35 U.S.C. § 271(b) by inducing customers to purchase and/or download the Accused Epson Apps and/or by instructing customers how to use the Accused Epson Apps in a way that directly infringes at least claim 14 of the '031 Patent.

205.   Epson has had actual knowledge of the '031 Patent since at least receipt of service of this Complaint.

206.   On information and belief, Epson's ongoing actions represent a specific intent to induce infringement of at least claim 14 of the '031 Patent.  For example, Epson offers its customers extensive customer support and instructions, including an instructional video and brochures, that instruct and encourage its customers to infringe the '031 Patent via at least their use of the Accused Epson Apps.  *See, e.g.,* https://epson.com/Support/sl/s; *see also* **Exhibit 27** and materials cited therein.

207.   Additionally, on information and belief, Epson is indirectly infringing the '031 Patent in violation of 35 U.S.C. § 271(c) by contributing to the direct infringement of Epson's customers.  Since at least when it learned of the '031 patent, Epson has known, or should have known, that the intended use of its Accused Epson Apps by an end user is both patented and infringing.

208.   The Accused Epson Apps are not staple articles or commodities of commerce suitable for substantial non infringing use.  Rather, the Accused Epson Apps are especially made and/or adapted for use in infringing the '031 Patent.  Further, the Accused Epson Apps are a material part of the inventions claimed in claim 14 of the '031 Patent.  *See* **Exhibit 27** and materials cited therein.

209.   As a result of Epson's infringement of the '031 Patent, Flexiworld has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

1

## COUNT XIV – INFRINGEMENT OF THE '856 PATENT

2      210.   Flexiworld incorporates herein the allegations made in paragraphs 1

3   through 106.

4      211.   Epson has and continues to directly infringe one or more claims of the

5   '856 Patent, including, for example, claim 17, in violation of 35 U.S.C. § 271(a) by

6   making, using, selling, offering for sale, and/or importing into the United States

7   infringing products including, but not limited to, the Accused Wireless Printers.

8      212.   An exemplary claim chart demonstrating Epson's infringement of the

9   '856 Patent, as well as Epson's customers' infringement of the '856 Patent, which is

10  induced by Epson, is attached as **Exhibit 28** and incorporated herein by reference.

11     213.   Additionally, on information and belief, Epson is indirectly infringing

12  the '856 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to

13  purchase the Accused Wireless Printers and/or by instructing customers how to use

14  the Accused Wireless Printers in a way that directly infringes at least claim 17 of the

15  '856 Patent.

16     214.   Epson has had actual knowledge of the '856 Patent since at least receipt

17  of service of this Complaint.

18     215.   On information and belief, Epson's ongoing actions represent a specific

19  intent to induce infringement of at least claim 17 of the '856 Patent.  For example,

20  Epson offers its customers extensive customer support and instructions that instruct

21  and encourage its customers to infringe the '856 Patent via at least their use of the

22  Accused Wireless Printers.   *See, e.g.,* https://epson.com/Support/sl/s; *see **also***

23  **Exhibit 28** and materials cited therein.

24     216.   As a result of Epson's infringement of the '856 Patent, Flexiworld has

25  suffered and is owed monetary damages adequate to compensate it for the

26  infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

27  / / /

28

1

**<u>DEMAND FOR A JURY TRIAL</u>**

2      Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Flexiworld

3  demands a trial by jury on all issues triable of right by a jury.

4

**<u>PRAYER FOR RELIEF</u>**

5      WHEREFORE, Flexiworld respectfully requests that this Court enter

6  judgment in its favor and grant the following relief:

7      a.  A judgment that Epson has directly and/or indirectly infringed one or

8          more claims of each of the Patents-in-Suit;

9      b.  A judgment and order requiring Epson to pay Flexiworld past and future

10         damages under 35 U.S.C. § 284, including for supplemental damages

11         arising from any continuing post-verdict infringement for the time

12         between trial and entry of the final judgment with an accounting, as

13         needed, as provided by 35 U.S.C. § 284;

14     c.  A judgment and order requiring Epson to pay Flexiworld reasonable

15         ongoing royalties on a going-forward basis after final judgment;

16     d.  A judgment and order requiring Epson to pay Flexiworld pre-judgment

17         and post-judgment interest on the damages award;

18     e.  A judgment and order requiring Epson to pay Flexiworld's costs; and

19     f.  Such other and further relief as the Court may deem just and proper.

20

21  DATED: APRIL 29, 2021                      FERNALD LAW GROUP

22

23                                             By: */s/ Brandon C. Fernald*
24                                             Brandon C. Fernald
                                               FERNALD LAW GROUP
25                                             15910 Ventura Blvd, Suite 1702
                                               Los Angeles, California 91436
26                                             P: 323.410.0320
                                               brandon@fernaldlawgroup.com

27                                             Timothy E. Grochocinski
                                               (*to be admitted pro hac vice*)
28                                             Illinois Bar No. 6295055

30



NELSON BUMGARDNER ALBRITTON PC
15020 S. Ravinia Avenue, Suite 29
Orland Park, Illinois 60462
P: 708.675.1975
tim@nbafirm.com

Edward R. Nelson III
(*to be admitted pro hac vice*)
Texas Bar No. 00797142
Ryan Griffin
(*to be admitted pro hac vice*)
Texas Bar No. 24053687
NELSON BUMGARDNER ALBRITTON PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
P. 817.377.9111
ed@nbafirm.com
ryan@nbafirm.com

31

PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT